In the Matter of the Application of the STATEN ISLAND RAPID TRANSIT COMPANY to Acquire Title to Lands.

The mere fact that land proposed to be taken by a railroad company is not needed for the present and immediate purposes of the petitioner is not necessarily a defense to a proceeding to condemn it.

The General Railroad Act (Chap. 140, Laws of 1850) gives to corporations organized under it authority to acquire lands by the exercise of the right of eminent domain, both from individuals and the State, for its prospective, as well as present, uses, provided the necessity for such use in the immediate future is established beyond reasonable doubt.

It seems that, as the exercise of this power is in derogation of individual rights, it should be allowed only when the necessity clearly appears, and the proposed use is clearly embraced within the legitimate objects of the power.

In proceedings by a railroad corporation operating a line of road on Staten Island to acquire lands under water in New York harbor, the title to which was in the State, the court found that the land was not required by the petitioner for the purposes of its local traffic, but was required and was necessary for the purpose of carrying out a contract between it and the B. & O. R. R. Co., owning very extensive lines of road, by which it was agreed that a connection should be made between the two roads, and the petitioner bound itself to furnish to the other company accommodations over its road for transportation of freight, passengers, etc., to and from the city of New York, thus making the petitioner's road a connecting link between the system of railroads operated by the B. & O. R. R. Co. and New York city. Held, that the obvious benefit to be de-

rived from such a connection by the public and the petitioner rendered the object for which the land was sought a public use, and justified its condemnation.

Also *held*, the fact that the B. & O. R. R. Co. is a foreign corporation furnished no reason for denying the relief sought.

It was claimed that because certain structures, *i. e.*, a bridge over navigable waters, and a short line of road, which are required to be built in order to connect the roads of the two companies, were not yet completed, or begun, the facts did not furnish a sufficient degree of probability of their ultimate construction as to authorize the condemnation of the land in question.    The B. & O. Co. was bound by its contract with petitioner to build the piece of road, and the latter was bound to build the bridge, and perfect its facilities for accommodating the increased traffic; it appeared also that by an act of Congress the contracting companies were authorized to build the bridge, and that they had already made large expenditures and incurred heavy obligations in the purchase of other lands, extending tracks, etc., for the purpose of carrying out the contract.    *Held*, that these facts, together with the manifest interest both companies have in carrying out the projected enterprise, afforded conclusive assurance that the application was made in good faith, and for the sole purpose of acquiring the land for the purposes alleged in the petition.

*It seems* that the court had authority to entertain the proceedings, and to grant the relief sought.  (§§ 21, 25, chap. 140, Laws of 1850.)

(Submitted June 15, 1886;  decided October 5, 1886.)

APPEAL by the people of the State of New York from order of the General Term of the Supreme Court, in the second judicial department, made the second Monday of May, 1886, which affirmed an order of Special Term appointing commissioners of appraisal to condemn certain lands under water adjoining Staten Island.

At the time named in the notice, which was served with the petition, no answer was served on behalf of the people, and the usual order appointing commissioners was made. Subsequently on motion, the default was opened, and leave to file an answer granted, " so far as to permit the trial of the issue of the necessity for the condemnation of the land described in the petition for railroad purposes without prejudice to any of the proceedings heretofore taken herein." In other respects the motion was denied.

Further facts appear in the opinion.

*Denis O'Brien, Augustus Schoonmaker* and *Thomas W. Fitzgerald* for appellant. There must be some record evidence of authority, express or implied, on the part of the railroad company before a court can go on and condemn lands under the statute. (*R. & S. R. R. Co.* v. *Davis,* 43 N. Y. 139 ; *In re N. Y. C. & H. R. R. R. Co.,* 77 id. 261, 264.) A foreign corporation cannot exercise the right of eminent domain in this State. (Mills on Eminent Domain, § 352; *In re Townsend,* 38 N. Y. 171 ; *In re N. Y., L. & W. R. R. Co.,* 99 id. 21.) There is no power in any court in this State to take private property for a public use, until it is conclusively and affirmatively proven by evidence, which admits of no reasonable doubt, that there is reasonable or other necessity for the land now or within a reasonable time. (*In re N. Y. C. & H. R. R. R. Co.,* 77 N. Y. 263, 269 ; *R. & S. R. R. Co.* v. *Davis,* 43 id. 145; *In re N. Y. & H. R. R. Co.,* 46 id. 553 ; *Flower* v. *L., B. & S. C. R. R. Co.,* 2 Drew. & Sm. 330.) There must be a clear case of public necessity before a railroad company can invoke the right of eminent domain in connection with the claim set up in the petition here. (*State* v. *Com'rs of Mansfield,* 23 N. Y. 510 ; *Mayor of Alleghany* v. *O. & Penn. R. R. Co.,* 26 Penn. 360 ; *S. W. R. R. Co.* v. *Bd. of Health,* 4 Ellis, 8 *b,* 189 ; *Bennett* v. *Boyle,* 40 Barb. 537 ; *Varrick* v. *North,* 5 Paige, 47–73 ; *Bloodgood* v. *Mohawk,* 18 Wend. 9 ; *In re Albany St.,* 11 id. 149 ; *In re John and Cherry Sts.,* 19 id. 659 ; *Embury* v. *Conner,* 3 N. Y. 511 ; *Nesbitt* v. *Trumbo,* 39 Ill. 111–118 ; *Hoyt* v. *Swan,* 5 Md. 237 ; 43 N. Y. 144.) It is further submitted as against the " People of the State of New York," this railroad company cannot, nor can other railroads, condemn the land, for the reason that it is land under water, dedicated by statute for the purposes of commerce. (*Edgerton* v. *Huff,* 26 Ind. 35 ; *Geisy* v. *C. C. R. R. Co.,* 4 Ohio, 308.) A railroad company having the right to condemn property for the purposes set forth in this petition must have a present necessity for the use of the property sought to be condemned. (*R. & S. R. R. Co.* v. *Davis,* 43 N. Y. 139 ; *In re N. Y. C. & H. R. R. R. Co.,* 77 id. 261, 264.) The property sought to be taken

in this proceeding, being land under water, cannot be taken by the petitioner under the delegated right of eminent domain. (*In re N. Y., W. S. & B. R. R. Co.*, 29 Hun, 269; *Mayor, etc.*, v. *C. R. R. Co.*, 53 Ga. 120; *Boston Heater Co.* v. *B. & W. R. R. Co.*, 23 Pick. 363; *Milwaukee & St. Paul R. R. Co.* v. *City of Fairbault*, 23 Minn. 167; *In re Application City of Buffalo*, 68 N. Y. 167; *In re B. & A. R. R. Co.*, 53 id. 574; *County Com'rs of Balt. Co.* v. *Bd. of Md. Hospital*, 62 Md. 127; *Worcester Co.* v. *Worcester*, 116 Mass. 193; Cooley on Taxation, 59.) Under the agreement between the petitioner and the Baltimore and Ohio Railroad Company, the petitioner is only the agent of the Baltimore and Ohio Company to condemn and procure the property in question for the uses of the foreign corporation. (*Bk. of Augusta* v. *Earle*, 13 Pet. 519, 584; *Louisville & Nashville R. R. Co.* v. *Quinn*, 14 Lea [Tenn.], 65 ; 22 Am. & Eng. Ry. Cas. 111, 114; *Halbert* v. *St. Louis R. R. Co.*, 45 Iowa, 23 ; *In re Townsend*, 29 N. Y. 171; chap. 296, Laws of 1855 ; *In re N. Y., L. E. & W. R. R. Co.*, 99 N. Y. 12 ) Unless specially authorized by its charter, or aided by some other legislative action, a railroad company cannot, by lease or other contract, turn over to another company, for a long period of time, its road and all its appurtenances, the use of its franchises and the exercise of its powers, nor can any other railroad company, without similar authority, make a contract to run and operate such road, property and franchises of the first corporation. (*Thomas* v. *R. R. Co.*, 101 U. S. 71; *G. B. & M. R. R. Co.* v. *Union Steamboat Co.*, 107 id. 98 ; *Davis* v. *Old Colony R. R. Co.*, 131 Mass. 258 ; *Pearce* v. *R. R. Co.*, 21 How. 441 ; *N. Y. & Md. R. R. Co.* v. *Winans*, 17 id. 30.) The objection that the corporation instituting the proceeding lacks, or has lost the power to condemn, may be taken in this proceeding. (*In re B. W. & N. R. R. Co.*, 72 N. Y. 235, 345 ; 81 id. 69 ; *B'klyn Steam Trans. Co.* v. *City of Brooklyn*, 78 id. 524.) Riparian owners have property rights to the lands under water adjoining their freeholds, and such rights are valuable and entitled to protection. (*Bell* v. *Gough*, 3 Zabr. 624 ; *Keyport Steamboat Co.* v. *Farmers'*

*Trans. Co.*, 3 C. E. Green, 224 ; *Att'y-Gen'l* v. *Hoosic Tunnel R. R. Co.*, 12 id. 176 ; *Yates* v. *Milwaukee*, 10 Wall. 497 ; *Potomac Steamboat Co.* v. *Upper Potomac Steamboat Co.*, 109 U. S. 682 ; *Weber* v. *Dock Com'rs of San Francisco*, 18 Wall. 57 ; *Lehigh Valley R. R. Co.* v. *Trom*, 28 Penn. St. 206 ; *Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122 ; *Mayor, etc.*, v. *Hart*, 95 id. 460 ; *Smith* v. *City of Rochester*, 92 id. 477.)

*Stewart & Boardman* for respondents.   A railroad company organized under the railroad laws of this State has power to make any arrangement that may be thought provident with any other railroad company for the interchange of business and traffic.   (*Woodruff* v. *Erie R. Co.*, 96 N. Y. 619 ; *Arnot* v. *Erie R. Co.*, 67 id. 315.)   The company need not wait until the want is instant, pressing and overwhelming, but may, in a provident business-like manner, anticipate the imminent necessities of the corporation.   (*In re N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 250 ; *In re D., L. & W. R. R. Co.*, 99 id. 12 ; *Lodge* v. *Phila., W. & B. R. R. Co.*, 8 Phil. 345.)   The bill authorizing the construction of the Arthur Kill bridge, passed by Congress, removes all obstacles to the making of the proposed connection within a few months.   (*S. C.* v. *Ga.*, 93 U. S. 4 ; *Clinton Bridge Case*, 10 Wall. 454 ; Cooley on Const. Lim. 454 ; *Wheeling Bridge Case*, 13 How. 566 ; 18 id. 434 ; *Bridge Co.* v. *U. S.*, 105 U. S. 479 ; *McCrady* v. *Virginia*, 94 id. 394 ; *Wheeler* v. *Harbor Com'rs*, 18 Wall. 66 ; *Clinton Bridge Case*, 1 Walworth, 163.)

RUGER, Ch. J.   Many of the questions discussed in the learned brief of the appellant's counsel do not seem to be open for consideration here, as they were neither raised in the court below, nor authorized by the order under which they were permitted to defend.   Aside from a request to dismiss the proceedings upon the ground of indefiniteness in the description of the land proposed to be taken, and which is not now raised by counsel, we find no objection in the record to the adjudication under consideration, except that of the alleged insufficiency

of the evidence to show that the property proposed to be taken was required for the purposes of the petitioning corporation. A motion was made to dismiss the petition for that reason, which was denied, and the appellant excepted to this decision. This exception presents the only material question exhibited by the record before us.

The appellant was restricted to this ground of objection by the terms of an order vacating *pro tanto* an adjudication already made in the proceedings, and was, therefore, precluded from raising any other ground of defense. Questions as to the corporate organization of the petitioning company, its action in authorizing these proceedings, the right of a railroad company to acquire lands under navigable water as against the State, and the rights and interests of littoral owners in such lands, are therefore, all excluded from the controversy by the terms of the order opening the appellant's default.

The original order of condemnation appointing commissioners to appraise the value of the land proposed to be taken constituted an adjudication in favor of the respondent upon the questions involved, disposing of every question which might have been raised in opposition thereto, except that allowed to be litigated by the order referred to.

It was conceded by the petitioner upon the hearing that the lands in question were not required for its present uses, and it is strenuously contended therefrom by the appellant, that the petitioner has not made a case for condemnation, or such a case as establishes a reasonable probability that such lands will be required for its uses in the future. It is quite obvious that the beneficial exercise of the power of acquiring property for public uses cannot be enjoyed unless allowed in anticipation of the contemplated improvement, and it is, therefore, well settled in this State, that the mere fact that the land proposed to be taken for a public use is not needed for the present and immediate purpose of the petitioning party, is not necessarily a defense to a proceeding to condemn it.

The statute authorizing the formation of railroad corporations confers power upon such as are organized under its pro-

visions to acquire lands by the exercise of the right of eminent domain, not only from individuals, but also from the State for its prospective as well as present uses, provided its necessities for such use in the immediate future are established beyond reasonable doubt. (*Lansing* v. *Smith*, 8 Cow. 146; *S. C.*, 4 Wend. 9; § 21, Laws of 1850, chap. 140; *Rens. & Sar. R. R. Co.* v. *Davis*, 43 N. Y. 137; *In the Matter of the N. Y. C. & H. R. R. R. Co.*, 77 id. 249.) The exercise of this power is in derogation of individual rights, and is always burdensome and often injurious to the owner beyond the power of pecuniary compensation to wholly redress, and should be allowed only when the necessity for the land clearly appears, and its proposed use is clearly embraced within the legitimate objects of the power.

The only question, therefore, before us is whether the evidence shows such a case as renders it probable that these lands will be required within a reasonable period for the use of the petitioning corporation.

No evidence was offered by the appellant upon the question at the trial, and it relies wholly for its defense upon the insufficiency of the proof given by the petitioner to establish a case for condemnation. The Special Term found as a fact that " the land was required by the petitioner for the purposes of its incorporation, to-wit: for tracks, switches, sidings and depot grounds, whereon cars may be moved, loaded and unloaded, stored, received and dispatched, for freight sheds wherein freight may be received and stored and then loaded into cars and delivered to consignees, and for necessary terminal grounds for the purpose of the incorporation of said company and for the purpose of constructing and operating its railroad." It was further found that such use was not required for the purpose of its local traffic, but for the purpose of enabling it to fulfill the obligations of a contract made between it and the Baltimore and Ohio Railroad Company, whereby it had bound itself to furnish to such company accommodations over its road for transporting freight, passengers, express and mail matter between the proposed ter-

mini of such Baltimore and Ohio road at Elizabethport, in New Jersey, to and from the city of New York. We think the evidence fully supported these findings.

The proof shows that the petitioner is a domestic railroad corporation operating a line of road on Staten Island which has been mainly used heretofore for local purposes, but which it is now proposed to utilize as a connecting link between the system of railroads known as that of the Baltimore and Ohio and the port and city of New York. The vast increase of business which such a connection will occasion to the petitioner's railroad and the necessity of increased facilities for handling it, is too obvious to be disputed. The benefit to be derived from such a connection not only to the public but also to the petitioner is clearly apparent from the evidence, and renders the object for which the appropriation of the land in question is sought, a public use within the meaning ascribed to that term by the decisions of this court. (*In re N. Y. & H. R. R. Co.* v. *Kipp*, 46 N. Y., 547; *In re N. Y. C. & H. R. R. R. Co.*, 77 id. 263.)

The fact that the condemnation of the land in question is also earnestly desired by a foreign railroad corporation, and will inure largely to its benefit, furnishes no reason for denying the relief asked for by the petitioner, provided it has brought itself within the language of the statute authorizing such a proceeding. (*In re N. Y., L. & W. R. R. Co.*, 99 N. Y. 21.)

It is claimed that because certain structures which are required to be built, in order to form the connection between the two systems of railroads, are not yet begun or completed, that their construction is conjectural and uncertain, and does not afford a sufficient degree of probability of their ultimate construction as authorizes the court to condemn the property in question for its proposed uses. The principal structures referred to are the extension of the petitioner's railroad over a bridge or viaduct, to be erected across Arthur's Kill, which divides Staten Island and New Jersey, and the building of a railroad track by the Baltimore and Ohio Railroad Company from Bound Brook to Elizabethport in New Jersey, a

distance of about sixteen miles, connecting the roads of the contracting parties. The evidence shows that the petitioner is bound by its contract with the Baltimore and Ohio Railroad Company to construct such bridge and perfect its facilities for accommodating the increased traffic within one year from the date of the contract, viz.: October 28, 1885, unless obstructed and delayed by hostile legal proceedings, or want of lawful authority to do so, and in case of delay from such causes, then with all reasonable diligence after such obstacles have been removed and authority obtained. The same contract provides that the Baltimore and Ohio Railroad Company shall within one year from the date thereof, or if delayed by hostile legal proceedings, with all reasonable diligence, perfect its connection at Elizabethport with the railroad of the petitioner. It thus appears that the contemplated connection between the petitioner's railroad and the vast system of railroads controlled by the Baltimore and Ohio Company is assured by contract obligations between parties interested in making such connection, and presumptively able to comply with their obligations, if no legal obstacles prevent. It also appears that the contracting parties have already built and leased lines stretching over several hundred miles for the purpose of carrying out the object in view, and that the Baltimore and Ohio Railroad Company has already in the performance of its contract assumed liabilities for the Staten Island Rapid Transit Railroad Company to the amount of $2,500,000, and has advanced and expended money in the purchase of property on Staten Island and elsewhere, and in extending its tracks for the purpose of the traffic contemplated to be carried on over the petitioner's road of upward of $1,000,000. The pecuniary expenditures made, and the liabilities assumed, by both of the contracting parties, as well as the manifest interest which both of them have in carrying into effect the projected enterprise, afford the most conclusive assurance, that this application is made in good faith, and for the sole purpose of acquiring property for the use of the petitioning railroad company. All of the testimony taken on the hearing concurs as to the necessity

of the appropriation of all of the property described for the proposed use, and we have been referred to no circumstance appearing in the case which seems to cast any suspicion upon the motives of the petitioner in preferring the application.

While the limitations under which the respondent is permitted to defend this proceeding do not permit it to raise any questions as to the authority of the court to entertain the proceeding and grant the relief sought, it may be proper to say that it seems to be fully authorized by sections 21 and 25 of the General Railroad Act and the cases of *Lansing* v. *Smith* (8 Cow. 146), and on appeal (4 Wend. 9), *Gould* v. *Hudson R. R. Co.* (6 N. Y. 524), and *In re Application of the N. Y. C. & H. R. R. R. Co.* (77 id. 248).

It is also proper to say that the enactment by Congress during its last session, of a bill authorizing the contracting parties hereinbefore referred to, to build a railroad bridge or viaduct across Arthur's kill has apparently removed any legal objections to such a structure, and rendered it quite certain that the connections contracted for between such parties will be made, and the property sought to be obtained by this proceeding devoted to the purposes alleged in the petition.

The order should be affirmed, with costs.

All concur.

Order affirmed.