CASE 60.—CONDEMNATION PROCEEDINGS BY THE MADI-
    SONVILLE, HARTFORD & EASTERN R. R. CO.
    AGAINST W. M. WARDEN.—March 25.

Warden v. Madisonville, H. & E. R. R. Co.

Appeal from Ohio Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for plaintiff, defendant appeals — Af-
firmed.

Eminent Domain—Condemnation for Railroad — Necessity — Evi-
    dence.—Evidence in proceedings to condemn a strip 200 feet
    wide for a railroad, under Ky. St. section 768, subd. 4, giving
    the right to condemn 150 feet where there are to be two tracks,
    and in addition for the purpose of cuttings or embankments,
    and for procuring stone, gravel, or other material, or for
    draining its roadbed, the right to take such other lands as
    may be necessary for the proper construction, operation, and
    security of the road, held sufficient to show a reasonable
    necessity for the land, which is all that is required; the
    testimony of the contractor that his contract was for a single
    track not being conclusive that the company did not intend
    to build another.

W. SCOTT MORRISON for appellant.

SYNOPSIS OF POINTS DISCUSSED.

1. The only questions determined by the lower court are whether
the railroad company had been properly incorporated and the
necessity for taking the strip of land 200 feet wide.

2. The judgment appealed from determines that the railroad
company was properly organized and that it is necessary for
the use of the company to have a strip of appellant's land 200
feet wide and it is to the latter finding that we direct attention.

3. We do not think that the testimony heard on the trial shows
any necessity for the use of a strip of land 200 feet wide.

4. The width of a strip of ground which a railroad company may take for a right of way, is fixed by the statute and no land can be taken beyond the limits of that strip except as may be specifically authorized by the statute for cuttings and embankments or material necessary for the construction of the road-bed. (Subsec. 4 of sec. 768, Ky. Stats., Elliot on Railroads, vol. 3, sec. 973, and authorities cited.)

GLENN & SIMMERMAN and BENJAMIN D. WARFEILD for appellee.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. The company was properly organized. This was shown by a properly attested copy of its articles of incorporation and certificate of the secretary of the railroad commission. (Warden v. M. H. & E. Ry. Co., 31 Ky. Law Rep., 234.)

2. A railroad company properly organized is, under our statute, invested with the power of eminent domain and to condemn the amount of land necessary for its purposes. (Warden v. M. H. & E. R., 31 Ky. Law Rep., 234.)

3. Necessity meant is a reasonable necessity, having due regard to the interests of the condemning party, the public as well as the land owner and also having regard for the future interests and needs of the company in the probable extension and development of its business. (15 Cyc. 632; Auroa G. Ry. Co. v. Harvey, 53 N. E., 331; Hays v. Briggs, 3 Pittsb., 504; Commissioners v. Maesto (Mich.), 51 N. W., 903; Pettingil v. Porter, 8 Allen, 1; Cates v. Mayor, &c., 7 Cow. 585; Prather v. Chicago & R. Co., 77 N. E., 430; Application Stanten Island Rapid Transit Co., 8 N. E., 548; O'Hare v. Chicago & N. R. Co., 28 N. E., 923, and cases cited; Platt v. Penn. Co., 1 N. E., 420; Clausen v. C. P. D. & L. Dis., 82 N. E., 278; Tracy v. E. L. & B. R., 80 Ky., 259; L. & N. R. R. Co. v. Scomp, &c., 30 Ky. Law Rep., 487.)

4. The necessity shown is a reasonable necessity for its use for the purpose of the company, taking into consideration all the facts and circumstances shown in the proof.

5. The necessity referred to in the decisions means "expedient," "reasonably convenient" or "useful to the public" or for the legitimate purposes of the condemning party.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Affirming.

This is the second appeal of this case. The opinion on the first appeal will be found in 125 Ky. 644, 101 S. W.914,31 Ky.L.R. 234. In that opinion this court said: "On the return of the case to the circuit court, the court will set aside the order sustaining the demurrer to so much of the answer as denied the incorporation of the plaintiff, and will hear proof as to the incorporation and as to the necessity of the strip of land proposed to be taken. A copy of the articles of incorporation duly certified will make out a prima facie case for the plaintiff as to its incorporation. If the proof shall satisfy the court that the strip of land is necessary for the purposes of the railroad company and that the railroad company has been properly incorporated, he will then enter a judgment upon the verdict of the jury. The verdict of the jury will stand, as there was no error in the proceedings before the jury, and the questions to be determined are purely questions of law for the court, but which must be determined by the court before a judgment taking the defendant's property for the plaintiff's use can properly be entered." Upon the return of the case, proof as to the organization of the company met the requirements of the former opinion of this court, and of such evidence of incorporation no complaint is made on this appeal. The only question now before us concerns the necessity for railroad purposes of the strip of land condemned. Before proceeding to state the evidence, we will advert to a few authorities construing the word "necessity" in connection with condemnation proceedings. In 15 Cyc. 632, the rule is

thus stated: "To authorize the condemnation of any particular land by a company to which the power has been delegated, a necessity must exist for the taking thereof, for the uses and purposes of the party instituting the proceedings, and this must be made to appear. And it is never permissible for a company or individual to appropriate more land than is necessary for its use. There is, of course, a prohibition against excessive appropriation or the taking of any land not within the scope of the purposes required. The moment the appropriation goes beyond the necessity of the case it ceases to be justified on the principles which underlie the right of eminent domain. Nevertheless necessity within the meaning of this rule does not mean an absolute but only a reasonable necessity, such as would combine the greatest benefit to the public with the least inconvenience and expense to the condemning party and property owner consistent with such benefit, although it does not include the taking of land which may merely render the employment of the improvement more convenient or less expensive, or for a necessity which is merely colorable." In the case of Aurora G. Ry. Co. v. Harvey, 178 Ill. 477, 53 N. E. 331, the Supreme Court of Illinois, in discussing the question of "necessity," said: "Counsel for appellees contends that a 'necessity' required by the statute in relation to horse and dummy railroads means an 'absolute necessity'—a necessity so great that in the case at bar, if it be physically possible for appellant to construct and maintain its railroad upon the highway, there is no right to condemn. We do not think that such a strict interpretation should be placed upon the language of the statute. * * * The safety, comfort, and convenience of the traveling public require protection, and the policy of the State must be

to compel railroad companies to so build their roads, to conserve the safety of its citizens to as high a degree as is reasonably attainable in view of the character and exigencies of that mode of transportation. In the construction of statutes relating to the taking of private property the word 'necessity' should be construed to mean 'expedient,' 'reasonably convenient or useful to the public, and can not be limited to the absolute physical necessity. This, we think, was certainly the intention of the Legislature when the act was passed. The view here expressed seems to be well supported by authorities." Hays v. Briggs, 3 Pitsb. R. (Pa.), 504; Commissioners v. Moesta, 91 Mich. 149, 51 N. W. 903; Pettingill v. Porter, 8 Allen (Mass.) 1, 85 Am. Dec. 671; Coates v. Mayor, etc., 7 Cow. (N. Y.) 585. In the Matter of Application of Staten Island Rapid Transit Railroad Co., etc. (decided by the Court of Appeals of New York) 103 N. Y. 251, 8 N. E. 548, that court said: "It was conceded by the petitioner upon the hearing that the lands in question were not required for its present uses, and it is strenuously contended therefrom by appellant that the petitioner has not made a case for condemnation, or such a case as establishes a reasonable probability that such lands will be required for its uses in the future. It is quite obvious that the beneficial exercise of the power of acquiring property for public uses cannot be enjoyed unless allowed in anticipation of a contemplated improvement; and it is therefore well settled in this State that the mere fact that the land proposed to be taken for a public use is not needed for the present and immediate purpose of the petitioning party is not necessarily a defense to the proceeding to condemn it. The statute authorizing the formation of railroad corporations confers power upon such as

are organized under its provisions to acquire land by the exercise of the right of eminent domain, not only from individuals, but also from the State, for its prospective as well as present uses provided its necessities for such use in the immediate future are established beyond a reasonable doubt." Our own court in the case of the L. & N. R. R. Co. v. Scomp, etc., 124 Ky. 330, 98 S. W. 1024, 30 Ky. Law Rep. 487, states the rule as follows: "When land is condemned for railway purposes, the strip is taken not with reference alone to the present needs of the company, but for all needs which the future may develop. The plaintiffs have therefore no cause of complaint that the defendant built the additional tracks referred to, or broke up its trains or stored its cars on these tracks." From these authorities we conclude that there must always exist a necessity for the appropriation of the land sought to be condemned. In determining this necessity the court should take into consideration all the facts and circumstances of the case. The right to condemn is not confined to the land that may be absolutely required at the time of the taking, but extends to so much as the present plans and purposes of the railroad company show will be reasonably necessary to construct and operate the road in accordance with those plans. By subsection 4, section 768, Ky. St. 1903, it is provided: "Every company shall possess the following powers, and be subject to the following liabilities and restrictions: To lay out its road not exceeding one hundred feet in width, and if more than one track is laid, fifty feet additional for each track, and construct the same; and for the purpose of cuttings or embankments, and procuring stone, gravel or other material, or for the purpose of draining its road-bed, to take, in the manner herein

provided, such other lands in the vicinity of or adjacent to its road as may be necessary for the proper construction, operation and security of its road. * * *,"

In this action appellee seeks to condemn 200 feet of appellant's property. The statute gives the right to condemn 150 feet where there are to be two tracks. In addition to this, the railroad is given, for the purpose of cuttings or embankments, and for procuring stone, gravel, or other material, or for the draining of its roadbed, the right to take other land as may be necessary for the proper construction, operation, and security of its road. The chief engineer of the appellee company testified that it was the intention of the company to build a double track on the land of appellant where it was sought to condemn 200 feet, and for the purpose of this double track and making the fill and properly draining the roadbed the 200 feet of land was necessary; that the greater part of the strip where the 200 feet was condemned is across a bottom where there is a considerable fill, and that the roadbed would require ditches on each side to drain and prevent its being injured by water; that the company would require, for the purpose of making this fill, dirt from each side of the road. He further stated that it was the intention of the company to put in a side track as soon as the main line was built. The witnesses also testified that the company had in view, although the exact location thereof had not been determined, the establishment of a depot, at or near the land sought to be condemned, in which event there would be a necessity for additional tracks. Appellant testified and described the condition of the land as to cuts and fills. E. S. McMillen, the contractor in charge of the work, stated that the fill on the land was

to be 7 feet high, 30 feet wide at the bottom, and 18 feet at the top; that some companies use 32 feet and some 40 feet for double track; that his contractor was to put in one track, and the fills were made from the cuts. We do not think the testimony of the contractor that his contract called for only one track is at all conclusive of the contention that the railroad company did not intend to build another track. Taking the testimony as a whole, we are of the opinion that appellee showed that the land proposed to be taken was reasonably necessary for the purposes of the company.

This is the view taken by the trial court; and the judgment is therefore affirmed.