[S. F. No. 13900. In Bank.—October 20, 1930.]

THE SAN DIEGO AND CORONADO FERRY COMPANY (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

Morrison, Hohfeld, Foerster, Shuman & Clark for Petitioner.

Arthur T. George, Ira H. Rowell, Roderick B. Cassidy, Stearns, Luce & Forward and Charles H. Forward, for Respondents.

SHENK, J.—Petition for writ of review to annul an order of the Railroad Commission granting a certificate of public convenience and necessity to Automobile Ferry Company of Coronado to operate a public ferry service for compensation across San Diego Bay between the cities of San Diego and Coronado.

The petitioner, the San Diego and Coronado Ferry Company, is a public utility and has for many years operated a public passenger and vehicle ferry service across San Diego Bay between the cities of San Diego and Coronado and is, therefore, subject to the jurisdiction of the Railroad Commission under the provisions of the Public Utilities Acts (Stats. 1925, p. 115). On January 3, 1929, Automobile

Ferry Company of Coronado filed with the Commission an application for a certificate declaring that public convenience and necessity require the operation of another ferry across San Diego Bay between said cities in competition with the petitioner's service. Public hearings were held at San Diego on April 2, 3 and 30, and on May 1 and 2, 1929, at which all parties entitled to be heard participated. The petitioner appeared and took an active part as a protestant at said hearings. On January 30, 1930, the Commission filed its opinion and order granting the application. A rehearing was denied and the present petition was filed April 10, 1930. As a return to the writ the Commission filed an answer and submitted for our consideration the entire record, which consists of a voluminous transcript of the testimony and over 100 exhibits and documents. The petitioner states that it is unnecessary to refer to the evidence before the Commission for the reason, so it is claimed, that the opinion and order shows its invalidity on its face. The Commission relies upon the record, including the evidence in support of its action. In the opinion of the Commission the entire situation is extensively treated. Some of it is discussion not amounting to findings and other portions thereof may properly be considered findings of fact.

It appears that the only ferry service conducted across San Diego Bay between San Diego and Coronado prior to the granting of the present certificate was that provided by the petitioner herein; that from October, 1920, to April, 1929, that company operated two ferry-boats, viz., the "Ramona," having a carrying capacity of about fourteen automobiles, and the "Morena," with a capacity of thirty-eight average cars; that the applicant has obtained the necessary franchise from the county of San Diego and the cities of San Diego and Coronado to authorize it to operate the proposed ferry line; that the applicant proposes to commence operations with one boat, to cost about $325,000 and having a carrying capacity of about fifty automobiles; that this service will accommodate local vehicular traffic between the cities of San Diego and Coronado, as well as through traffic between the Mexican border and points north of San Diego *via* the Coronado strand; that the new ferry line extends from the foot of Kettner Boulevard in

San Diego to "B" Street in Coronado and will operate about 500 feet easterly of the route over which the boats of the petitioner have been and are operated; that on April 21, 1929, or twelve days before the submission of the matter to the Railroad Commission, the petitioner herein put into service a new boat called the "Coronado," with fifty to sixty automobile capacity, and retired the "Ramona" for stand-by service.

In its opinion the Commission stated that it was apparent from the record that the applicant for the certificate had made definite progress in proposing to establish a competitive ferry by obtaining franchises, etc., before the petitioner herein had placed its order for the new boat "Coronado," and that prior to the time this new boat was put into operation on April 21, 1929, the petitioner was not doing its full duty to the public and its service to the public was inadequate. The opinion further states: "For this commission to protect a utility which has allowed its service to run down, as the record shows has been the case here, until competition knocks at the door, is not conducive to good service and to public interest. It is incumbent upon every utility in this state to be abreast with public needs, regardless of whether there is competition facing it or not. A utility must assume the obligation of providing reasonably good service to its patrons if it expects to hold the field; to hold otherwise is not conducive to the growth and welfare of the community."

It is contended, however, that the force of the findings of the Commission in support of its conclusion that the certificate should be granted is entirely dispelled by the further statement in the opinion as follows: "It appears, however, that subsequent to the time the new boat 'Coronado' has been put in operation, the ferry capacity was adequate to accommodate all the traffic offered for transportation without delay." This statement, it is claimed, renders the order granting the certificate void on its face on the theory that it constitutes a finding that further ferry service is unnecessary and, therefore, the conclusion of the Commission that public convenience and necessity require the granting of the certificate applied for is unsupported. We do not so construe the statement of the Commission, assuming it to be a finding. Undoubtedly the statement had

508

reference to the twelve-day period, in an "off month" from the standpoint of traffic, and which was the period from the day the new boat was put in operation to May 2d, when the entire matter was taken under advisement by the Commission. The statement is not inconsistent with the implied finding of the Commission, justified by the record, that, taking into consideration the periods of heavier travel and the requirements of future service and the present and future growth of the community, the additional ferry service would further the public interest. The Commission stressed the importance of service in which the petitioner herein had been found wanting, but based its conclusion also on the estimates of future business available to both companies. These estimates, submitted by engineers and other witnesses for the respective parties, were not in accord. This might be expected in the ordinary course of such a hearing. The necessary inference from the opinion of the Commission on this phase of the matter is that an injustice would be meted out to the petitioner herein by the installation of the new service. This implied finding is attempted to be utterly destroyed by the statement of the Commission that from an analysis of the estimates on probable future business "There arises some question as to whether or not sufficient additional traffic can be developed, with the two companies operating, so that each will enjoy a profitable business." Obviously there was a question presented to the Commission on that issue, and, while the finding thereon is not as definite as might be desired, there is sufficient in the record to justify the conclusion that under all the circumstances appearing in the case, both from the standpoint of service and future business, the public interest would be subserved by the granting of the certificate, and that each company could operate at a profit.

It is vital, then, to consider the scope of the power vested in this court to set aside an order of the Commission under the record here presented. ■ Upon the reorganization of the Railroad Commission in 1911 by the adoption of sections 22 and 23 of article XII of the Constitution and the re-enactment of the Public Utilities Act in 1915 (Stats. 1915, p. 115), a new policy with reference to the regulation and control of public utilities in this state was promulgated. The new policy proceeded generally on the theory of regu-

lated monopoly. But it did not go the length of guarantee-
ing monopoly in all cases. Throughout the legislation runs
the unbroken thread that the public interest is first to be
considered. The administration of the new law was placed
in the hands of the Railroad Commission, unhampered and
uncontrolled by court interference except to a specified and
limited extent. Section 67 of the Public Utilities Act, with
reference to the powers of this court, provides in part:
"The review shall not be extended further than to deter-
mine whether the commission has regularly pursued its au-
thority, including a determination of whether the order or
decision under review violates any right of the petitioner un-
der the Constitution of the United States, or of the state
of California. The findings and conclusions on questions
of fact shall be final and shall not be subject to review;
such questions of fact shall include ultimate facts and the
findings and conclusions of the commission on reasonable-
ness and discrimination. . . . No court of the state (except
the Supreme Court to the extent herein specified) shall have
jurisdiction to review, reverse, correct or annul any order
or decision of the commission. . . . " In *Clemmons* v. *Rail-
road Com.*, 173 Cal. 254, it was said at page 258 [159 Pac.
713, 714], that "the legislature might have withheld from
the courts of the state any power of reviewing the acts of
the commission. (*Pacific Tel. & Tel. Co.* v. *Eshleman*, 166
Cal. 640 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652,
137 Pac. 1119].) The power to review which is given must
be exercised within the limits and upon the conditions which
the legislature has seen fit to fix." In *Oro Electric Corp.*
v. *Railroad Com.*, 169 Cal. 466, this court said at page 471
[147 Pac. 118, 119] : "The validity of section 67 of the
Public Utilities Act, in so far as it limits the scope of re-
view by state courts of the acts of the commission, must be
regarded as finally settled by the telephone company case.
By that section, the findings and conclusions of the commis-
sion on questions of fact are made final and not subject to
review. Here the commission found the ultimate fact that
the public convenience and necessity did not require the
exercise of the privileges in controversy, and neither the
sufficiency of the evidence, nor the soundness of the reason-
ing, upon which that finding was based, can be considered
on this proceeding." Again, referring to said section 67,

it was said in *Sexton* v. *Atchison etc. Ry. Co.*, 173 Cal. 760 [161 Pac. 748, 749]: "The clear intent of the provision as a whole is to place the commission, in so far as the state courts are concerned, in a position where it may not be hampered in the performance of any official act by any court, except to the extent and in the manner specified in the act itself." (See, also, *Truck Owners & Shippers* v. *Superior Court,* 194 Cal. 146 [228 Pac. 19].)

Counsel for the petitioner rely on the cases of *Marin Water etc. Co.* v. *Railroad Com.*, 171 Cal. 706 [Ann. Cas. 1917C, 114, 154 Pac. 864], *Allen* v. *Railroad Com.*, 179 Cal. 68 [8 A. L. R. 249, 175 Pac. 466], and *Traber* v. *Railroad Com.*, 183 Cal. 304 [191 Pac. 366, 368], as laying down the rule applicable to the present case. In the Traber case this court said: "Notwithstanding the declaration of section 67 that the commission's determination of matters of fact are not subject to review, it must be held that its determination upon the question whether or not the facts existing are sufficient to bring the case within the scope of its powers must be subject to review, so far as they present a question of law bearing upon that subject, and that the provision that the 'conclusions' of the commission on the facts are final does not apply to facts necessary to the existence of the jurisdiction of the commission to act. (*Del Mar etc. Co.* v. *Eshleman,* 157 Cal. 677 [140 Pac. 591, 948].) But if the evidence in proof of such facts is substantial in character and justifies the inference or conclusion that the facts necessary to the jurisdiction of the commission did exist, then, under the general principles of law regarding the proceeding in *certiorari,* its decision as to the effect of such evidence is binding and conclusive on the reviewing court." But here no question as to the jurisdiction of the Commission to proceed is involved. The power of the Commission to entertain the application for the certificate cannot be disputed.

From other jurisdictions the petitioner cites cases, first from Illinois, which it claims supports its contentions. In that state the Illinois Commerce Commission Act was passed in 1921 (Laws 1921, p. 702). Section 68 of that act provides for an appeal to the circuit or superior court "for the purpose of having the reasonableness or lawfulness of the rule, regulation, order or decision inquired into and

determined. . . . The findings and conclusions of the commission on questions of fact shall be held *prima facie* to be true and as found by the commission.'' It then provides that any order or decision of the Commission shall not be set aside ''unless it clearly appears that the finding of the commission was against the manifest weight of the evidence . . . or that the same was without the jurisdiction of the commission. . . . Appeals . . . shall be governed by the rules applying to chancery cases appealed to the superior court, except that formal pleadings shall not be required.'' In the cases applying that law the court proceeded to and did pass upon the weight of the evidence and the reasonableness of the order or decision. But the powers of our court are much more restricted and circumscribed. We may not thus weigh the evidence.

Cases cited from other states expounding theories of regulated monopoly or restricted competition under particular statutes are likewise not helpful in defining the powers of the respondent Commission and of this court under our law. There is a clear distinction between a law which permits the court to review the evidence and one which so plainly prohibits it.

[redacted] The phrase ''public convenience and necessity'' cannot be defined so as to fit all cases. The word ''necessity'' must be taken in a relative sense. The Supreme Court of Illinois has well expressed its meaning in *Wabash C. & W. Ry. Co.* v. *Commerce Com.*, 309 Ill. 412 [141 N. E. 212, 214], where it was said: ''When the statute requires a certificate of public convenience and necessity as a prerequisite to the construction or extension of any public utility, the word 'necessity' is not used in its lexicographical sense of 'indispensably requisite.' If it were, no certificate of public convenience and necessity could ever be granted. The first telephone was not a public necessity under such definition, nor was the first electric light. Even the construction of a waterworks system in a village is seldom necessary, though highly desirable. However, any improvement which is highly important to the public convenience and desirable for the public welfare may be regarded as necessary. If it is of sufficient importance to warrant the expense of making it, it is a public necessity. (*Park & Boulevard Commrs.* v. *Moesta,* 91 Mich. 149 [51 N. W. 903].) A thing which

is expedient is a necessity. (*Warden* v. *Madisonville, H. & E. R. Co.*, 128 Ky. 563 [108 S. W. 880].) Inconvenience may be so great as to amount to necessity. (*Lawton* v. *Rivers*, 2 McCord (S. C.), 445 [13 Am. Dec. 741].) A strong or urgent reason why a thing should be done creates a necessity for doing it. (*Todd* v. *Flournoy*, 56 Ala. 99 [28 Am. Rep. 758].) The word connotes different degrees of necessity. It sometimes means indispensable; at others, needful, requisite, or conducive. It is relative rather than absolute. No definition can be given that would fit all statutes. The meaning must be ascertained by reference to the context, and to the objects and purposes of the statute in which it is found. (*Wisconsin Tel. Co.* v. *Railroad Com.*, 162 Wis. 383 [L. R. A. 1916E, 748, P. U. R. 1916D, 212, 156 N. W. 614].) The Commerce Commission has a right to, and should, look to the future as well as to the present situation. Public utilities are expected to provide for the public necessities not only today, but to anticipate for all future developments reasonably to be foreseen. The necessity to be provided for is not only the existing urgent need, but the need to be expected in the future, so far as it may be anticipated from the development of the community, the growth of industry, the increase in wealth and population, and all the elements to be expected in the progress of a community.''

The respondent Commission has discussed at length its views with reference to the new policy of the law in this state advanced by the Constitution and the statute on the question of regulated monopoly and competition. (*Pacific Gas & Elec. Co.* v. *Great Western Power Co.*, 1 C. R. C. 203; *In re Oro Electric Corp.*, 2 C. R. C. 738, and *In re United Parcel Service*, 32 C. R. C. 82.) There is nothing in their declarations of policy inconsistent with the order now under attack. The policy as declared by the statute and applied by the Commission has never gone to the length of guaranteeing monopoly in all cases, but has at all times deemed the public interest as of paramount importance. It has announced that when an existing utility has fallen short of its full duty to the pubilc it will not necessarily be protected against competition, and that its activities before and at the time competition knocks at the door may be taken into consideration notwithstanding protestations of bet-

ter behavior in the future. The Commission has never foreclosed itself, even if it could, from acting favorably on an application for a certificate, the consideration of which is so peculiarly within its own jurisdiction. The discretion of the Commission in such matters is very broad. In discussing this question with reference to the powers of a similar commission the Supreme Court of Kansas said: "The discretionary power of the commission to grant or withhold certificates of convenience to public utility companies is broader than its power to govern rates and services of such companies. In the exercise of the latter powers, the lawful scope of the commission's orders is hedged about by statutory and constitutional guaranties and inhibitions. In the granting or withholding of certificates of convenience, no justiciable question touching confiscation of property or impairment of vested rights can well arise. Time and again this court, in consonance with the prevailing attitude of courts throughout the country, has declared that it will not substitute its judgment for that of some administrative tribunal created by legislative authority for dealing with matters of nonjudicial character; and certainly the question whether a competing gas company should be licensed to serve industrial plants in and around Wichita and Hutchison is peculiarly a question for an official board to determine and one with which a judicial tribunal should be slow to meddle." (*Kansas G. & E. Co.* v. *Public Service Com.*, 122 Kan. 462 [251 Pac. 1097, 1099].)

That reasonable minds might differ as to the wisdom of the order, illustrated by the fact that three members of the Commission voted for the same with two dissenting, would tend to uphold rather than to destroy the order. We conclude that there is sufficient in the record to justify the decision and that the findings are not inconsistent with the order made.

The order is affirmed.

Richards, J., Curtis, J., Preston, J., Langdon, J., Waste, C. J., and Seawell, J., concurred.

Rehearing denied.