[Civ. No. 27991. First Dist., Div. Two. Nov. 26, 1971.]

LUXOR CAB CO., Plaintiff and Appellant, v.
THOMAS CAHILL et al., Defendants and Respondents;
CHAUFFEURS UNION LOCAL 265, Intervener and Appellant;
BEN BARKAN et al., Interveners and Respondents.

## Counsel

James C. Purcell for Plaintiff and Appellant.

Edward M. Kovach and Brundage, Neyhart, Grodin & Beeson for Intervener and Appellant.

Thomas M. O'Conner, City Attorney, and Edmund A. Bacigalupi, Deputy City Attorney, for Defendants and Respondents.

Charles H. Blagburn for Interveners and Respondents.

## Opinion

**TAYLOR, P. J.**—This is an appeal by Luxor Cab Company and Chauffeurs Union Local 265,[1] hereafter appellants, from a judgment denying petitions for injunction and writ of mandate to prevent respondents,[2] Board of Permit Appeals and Police Commissioners (hereafter collectively referred to as Board) of the City and County of San Francisco, from issuing 110 new certificates for the operation of taxicabs in 1968. Appellants contend that their petitions should have been granted as: 1) the Board failed to make specific findings; 2) the evidence is insufficient to support the judgment; and 3) the Board had no jurisdiction in 1968 to grant certificates to those whose prior applications had been denied the preceding year. We have concluded that there is no merit to any of these contentions and that the judgment must be affirmed.

The basic facts are not in dispute. On April 9, 1968, the police commission announced it would hold hearings for the issuance of certificates of public convenience and necessity for the operation of taxicabs on May 13, 1968, and requested that all applications be filed by May 1, 1968. The police commission has original jurisdiction for granting these certificates, pursuant to San Francisco Municipal Code sections 1075-1079,

---

[1] The union was granted permission to intervene in the original proceeding initiated by Luxor Cab.

[2] The remaining respondents are individual members of the respective Board or commission and certain persons who were issued certificates in 1968, who were also granted permission to intervene.

portions of which are set forth below.[3] The police commission received 311 applications seeking a total of 1,272 certificates, and held hearings from May 13, 1968, until December 2, 1968. On December 16, 1968, by Resolution No. 307-68, the police commission rendered its decision to grant 110 certificates to 90 of the applicants: all but 5 applicants received single certificates; the remaining 5 received from 2 to 8.

Immediately thereafter, pursuant to section 39 of the San Francisco Charter, the decision of the police commission was appealed to the Board, which consolidated all of the protests. The Board conducted hearings on February 3 and April 7, 1969. Oral testimony and exhibits were submitted, including the records of the police commission. On April 14, 1969, the Board concurred in the order of the police commission directing issuance of the 110 new certificates.

---

[3]Section 1075: "Providing for the issuance of Certificates of Public Convenience and Necessity in licensing Vehicles for Hire. No license or permit shall be issued for the operation of any motor vehicle engaged in the business of or used for transporting passengers for hire, unless and until the Police Commission shall by resolution declare that public convenience and necessity require the proposed motor vehicle for hire service for which application for a license or permit is made.

"Provided, the such declaration of public convenience and necessity shall not be necessary—

"(a) For the licensing (but only in the same class, type and character of any one of the services defined in Section 1116 of this Article, or Section 1165 of this Article, or Section 1086 of this Article) of the same number of motor vehicles for hire, licensed for operation and operated by the applicant in said class, type and character of service under the same name and colors on the 24th day of February, 1932, or the renewal of the same license annually thereafter; provided, however, that this exception shall apply only in the event that the applicant was engaged on the 24th day of February, 1932, in the actual operation of a motor vehicle for hire business, in the same class, type and character of service, as thus defined, and was at said time complying with all of the provisions of Ordinance No. 5132 (New Series) as amended and all provisions of municipal and state statutes applicable.

"(b) For the licensing for the operation of motor vehicles engaged in the business of, or used for, transporting passengers for hire, when such motor vehicles are operated under and by reason of certificates of public convenience and necessity issued by the Railroad Commission of the State of California, provided, however, that this clause shall be construed to create an exception only to the extent, character and type of operation expressly prescribed by the certificate or certificates issued by said Railroad Commission and shall be limited by and be entirely within the scope of said certificate or certificates issued by said Railroad Commission."

Section 1076: "Facts to be Considered by Police Commission. The Police Commission, in determining whether or not public convenience and necessity exists, may take into consideration all facts as it may deem pertinent and proper, which facts shall or must include specific finding that the following conditions exist: . . .

"(b) That the persons, firms or corporations holding permits or licenses for the operation of motor vehicles for hire are under efficient management, earning a fair and reasonable return on their capital devoted to such service.

"(c) That persons, firms or corporations holding permits or licenses for the operation of vehicles for which application is being made are, under normal conditions, inadequately serving the public."

Before turning to appellants' contention, we briefly summarize the rules applicable to the review of the judgment before us. ■ It is well settled that in passing upon license or permit matters, the board of permit appeals is an administrative tribunal invested by the city charter with broad quasi-judicial powers to hear and determine an entire controversy, to draw its own conclusions from conflicting evidence, and exercise its own independent judgment to affirm or overrule the agency or official exercising permit power at the primary level (*Iscoff* v. *Police Commission,* 222 Cal. App.2d 395 [35 Cal.Rptr. 189].) ■ In the exercise of its broad discretion, the Board is not limited to a determination of whether the primary administrative body complied with the ordinances regulating permit procedure (*Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303, 313-314 [144 P.2d 4]).

■ Only the decision of the Board is subject to judicial review by mandamus, not the order of the inferior administrative body.[4] In a mandate proceeding, the Board's decision is to be examined only on the record before the Board and must be sustained if supported by substantial evidence (*Greif* v. *Dullea,* 66 Cal.App.2d 986, 1007 [153 P.2d 581]; *Hora* v. *City & County of San Francisco,* 233 Cal.App.2d 375, 378 [43 Cal.Rptr. 527]). The only question before this court, as was in the court below, is whether there was an affirmative showing that the Board abused its discretion or acted arbitrarily. In making its decision, the Board was bound to exercise its authority, guided by the relevant law that includes the Constitution, statute, order and a lawful discretion applied to the facts in evidence (*City & County of S.F.* v. *Superior Court,* 53 Cal.2d 236, 250 [1 Cal.Rptr. 158, 347 P.2d 294]).

■ Appellants complain that the Board failed to make specific findings of fact required by Municipal Ordinance section 1076(b) and (c). As this court (Division One) clearly explained in *Cow Hollow Improvement Club* v. *Board of Permit Appeals,* 245 Cal.App.2d 160, 169-170 [53 Cal. Rptr. 610], the Board is not required to make specific findings when exercising its appellate powers pursuant to section 39 of the city charter. Both the *Cow Hollow* case, *supra,* and *Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals,* 66 Cal.2d 767 [59 Cal.Rptr. 146, 427 P.2d 810], cited by appellants, involved the Board's more limited review powers with respect to zoning variances granted pursuant to other provisions of the charter that expressly mandate specific findings.

Appellants' closing brief concedes that section 39 of the charter does

---

[4]Accordingly, it is not necessary to discuss appellants' contention that the police commission failed to make the specific findings required by Municipal Code section 1076(b).

not require specific findings, but urges that we hold that on a hearing de novo on an appeal from a decision of the police commission, the Board be required to adhere to the same standards as the primary agency. This contention ignores the Board's broad discretion in passing upon permit matters as well as the general rule that an ordinance cannot conflict with, exceed or limit the effect of a charter provision (*Hartford Acc. etc. Co.* v. *City of Tulare,* 30 Cal.2d 832 [186 P.2d 121]).

█ Appellants next contend that there was insufficient evidence before the Board as to whether or not present certificate holders were earning a fair and reasonable return on their capital and whether public convenience and necessity . required the issuance of new certificates. █ This contention ignores the well established principle that the action of an administrative board is supported by the presumption that the existence of the necessary facts has been ascertained (*City & County of S. F.* v. *Superior Court,* 53 Cal.2d 236, 251 [1 Cal.Rptr. 158, 347 P.2d 294]). Thus, the Board's decision comes before this court with a strong presumption that official duty has been regularly performed, that the facts necessary to support its conclusions have been ascertained and found, and that such findings are supported by substantial evidence (*Gong* v. *City of Fremont,* 250 Cal.App.2d 568, 574 [58 Cal.Rptr. 664]; *Board of Permit Appeals* v. *Central Permit Bureau,* 186 Cal.App.2d 633 [9 Cal.Rptr. 83]).

Although appellants failed to furnish a complete record of the oral proceedings before the Board[5] and are technically precluded from raising the issue of reasonable return on capital on appeal (*Black* v. *State Personnel Board,* 136 Cal.App.2d 904, 909 [289 P.2d 863]; *Wisler* v. *Cal. State Bd. of Accountancy,* 136 Cal.App.2d 79 [288 P.2d 322]), the record indicates that a complete transcript was considered by the court below and thus, under the above presumptions, its affirmance of the Board's order cannot be here questioned.

█ In addition to the presumptions in favor of the existence of all the facts necessary to sustain the decision and that the Board properly exercised its discretion, the record sufficiently supports the findings that public convenience and necessity required the issuance of new certificates for taxicab service in San Francisco. Public convenience and necessity has been defined as a public matter, without which the public is inconveni-

---

[5]Appellants attempt to remedy this failure by reproducing certain portions of the oral proceedings as an appendix to their opening brief. It is well settled that briefs cannot be used to make a record (*Newman* v. *Board of Civil Service Comrs.,* 140 Cal.App.2d 907, 912 [296 P.2d 41]; *Daly* v. *Otis,* 92 Cal.App. 242, 244-245 [267 P. 921]).

enced to the extent of being handicapped in the practice of business or wholesome pleasure or both, and without which the people of the community are denied, to their detriment, that which is enjoyed by others similarly situated. Public necessity does not mean *indispensable* to the public but an urgency less pressing (*San Diego etc. Ferry Co. v. Railroad Com.*, 210 Cal. 504, 511 [292 P. 640]).

The record before the Board from the 1968 proceedings before the police commission, included the following: 1) evidence of increased convention attendance and business in San Francisco from 1952 to 1967; 2) many petitions demonstrating inadequacy of taxicab service in the Western Addition area; 3) letters indicating the inadequacy of taxi service at the airline terminals and the East Bay Terminal, as well as Mt. Zion Hospital; 4) letters from managers of over 30 hotels and motels, physicians, hospital personnel and the Chinese Chamber of Commerce indicating inadequate taxi service in the downtown area.

■ Appellants also maintain that the Board's concurrence in the issuance of 110 new certificates infringed on the vested rights of present certificate holders. The use of streets by taxicabs is a privilege that may be granted or withheld without violating either due process or equal protection. This privilege may be granted exclusively or nonexclusively to render public services (*In re Petersen,* 51 Cal.2d 177, 182-183 [331 P.2d 24]). In any event, the granting or withholding of a privilege based upon certificates of public convenience and necessity presents no judicial controversy touching on the impairment of vested rights (*San Diego etc. Ferry Co. v. Railroad Com.*, 210 Cal. 504, 513 [292 P. 640]).

■ Finally, appellants argue that the Board exceeded its jurisdiction in sustaining the police commission's decision to grant certificates in 1968 to a number of applicants within one year from the denial of their previous applications. The record indicates that 20 of the applicants who were granted 35 certificates in 1968 had applied and been denied certificates within the preceding year. Appellants' contention is predicated on the pertinent part of section 31 of part III of the San Francisco Municipal Code, set forth below.[6]

---

[6]"Whenever any person, firm, or corporation shall make application for any permit, pursuant to the provisions of this Article, and said permit shall be denied by any officer, board, department or commission having jurisdiction so to do, and no appeal from the denial of said permit shall be taken, as provided in this Article, or when any appeal shall be taken to the Board of Permit Appeals from any action or order of any officer, board, department or commission granting or denying any permit in connection with which appeal to the Board of Permit Appeals is provided for and said Board of Permit Appeals shall, in the instance where said permit has been granted, overrule, and *in the instance where said permit has been denied,*

■ In the first place, the restrictive language of section 31 is by its terms limited to a certificate for the same location. The record indicates that it was so interpreted by the police commission. Furthermore, the final clause demonstrates that the prohibition against reapplication within one year shall not apply if previously existing conditions have changed.

■ The record indicates that the applications were invited by the police commission as there had been a change of conditions since the rejection of the applications the preceding year. In any event, the purpose of section 31 is to shield the administrative agency from repetitious applications by applicants made on their own initiative and can be waived by the agency.

The judgment is affirmed.

Kane, J., and David, J.,* concurred.

---

concur in, the judgment or order of said officer, board, department or commission, *said application for said permit, nor for a like permit covering the same location, shall not be renewed nor shall the same be heard* by the officer, board, department or commission to whom or to which the original application was made *until the expiration of one year from the date of the action on said original application* by said officer, board, department or commission and there shall be no appeal to said Board of Permit Appeals for failure or refusal to hear any such application within said one-year period, *provided that when any permit is denied by reason of definite existing conditions which prevent the granting of said permit, and said conditions are removed or remedied, the one year's prohibition against a reapplication will not apply.*" (Italics added.)

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.